IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIA MICHAEL, DANIEL MICHAEL, and ANGELA MICHAEL,   )<br>)<br>Plaintiffs,   )<br>)<br>v.   )<br>)<br>THE CITY OF GRANITE CITY, ILLINOIS,   )<br>a Municipal Corporation, EDWARD   )<br>HAGNAUER, Mayor of the City of Granite   )<br>City, in his official and individual capacities,   )<br>RICHARD MILLER, Chief of Police of Granite   )<br>City, in his official and individual capacities,   )<br>and Granite City Police Officers MERZ and   )<br>NOVASICH, in their individual capacities,   )<br>)<br>Defendants.   ) | Cause No. 06-CV-01-WDS |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

Plaintiffs, Mia Michael, Daniel Michael and Angela Michael have filed a motion for a preliminary injunction (Doc. 24), to which defendants have filed a response (Doc. 26).

The motion seeks to have the Court enjoin the City of Granite City and its agents, including defendants Miller, Novasich and Merz, and officials including Hagnauer from enforcing Ordinance 7878 at the Labor Day parade. Ordinance 7878 prohibits signs larger than 8 1/2 by 11 inches within a 25 foot distance of any portion of a parade route. The penalty for violation of this statute is a fine of $25 to $100. The Court held an evidentiary hearing on the motion and took the matter under advisement. The parties have now filed additional briefs, (Docs. 29, 30) which the Court has considered. In addition, plaintiffs filed a motion to supplement authority (Doc. 32), which the Court **GRANTS.**

## **EVIDENCE PRESENTED AT THE HEARING**

Plaintiffs presented the testimony of Daniel Michael and Mia Michael in support of their motion for injunctive relief. In addition, plaintiffs offered a videotape of the November 2005 Granite City Santa Claus parade (Plaintiffs' Exhibit 1) where discussions occurred among City officials and the plaintiffs and others, and an altercation occurred between some of the plaintiffs and parade observers over the nature and content of the signs that the plaintiffs were displaying at the parade. The defendants objected to the admission of this exhibit, but the Court overruled defendants' objection and has considered the videotape as part of its review of plaintiffs' motion. The Court notes, however, that the videotape offered little to the Court's analysis of the issues raised in the motion for preliminary injunction. Defendants presented no live testimony, but did submit a legible copy of the Granite City ordinance in question, Ordinance No. 7878 (Defendants' Exhibit 1).

Daniel Michael testified that he has been active in pro-life protests in Granite City, Illinois, for some time. He stated that he normally carries signs on public sidewalks, and that he wants the signs, and their messages, to be seen by those people participating in the Labor Day parade. He further testified that the signs he carries are usually 2' by 3' or 4' by 6 to 7'. He indicated that it was his desire to have the politicians in the Labor Day parade see the signs he would be carrying because of the message they detailed about his personal, religious belief that abortion is improper and the politicians should do something about this practice. He indicated that he had no other reasonable means to reach these same people, i.e. politicians, who will be riding in the parade. It was his opinion that if he were to hold a sign in compliance with Ordinance 7878 (8 ½ by 11 inches, 25 feet from the parade route) the politicians, who are in

moving vehicles, would not be able to see the sign at all. He further testified that it would not be realistic to approach politicians either before or after the parade. If the Ordinance is in effect at the Labor Day Parade, Daniel Michael stated he would not likely protest for fear of punishment.

Mia Michael, who is the 17 year old daughter of Daniel Michael, testified that she videotaped the Granite City Santa Claus parade where a fellow protester was assaulted by a parade-goer. She also stated that she wants to protest at the Labor Day parade, but is concerned about punishment under the Ordinance.

The Court notes that the Labor Day parade is sponsored by the Tri-City Chapter of the AFL-CIO, and is not a City-sponsored parade. The Court further notes that Ordinance 7878 specifically identifies "the annual Labor Day weekend parade" as one of the four parades to which Ordinance 7878 will apply.

## INJUNCTIVE RELIEF

1. General Standards for Issuance of Injunctive Relief.

The Supreme Court has stated that, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To be entitled to this extraordinary relief, the plaintiffs must show that "(1) they have a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Goodman v. Ill. Dep't Of Fin. and Prof. Reg.,* 430 F.3d 432, 437 (7th Cir. 2005) (*citing Joelner v. Vill. of Washington Park*, 378 F.3d 613, 620 (7th Cir.2004)); *see also, Erickson v. Trinity*

*Theatre, Inc.*, 13 F.3d 1061, 1607 (7th Cir.1994). If the moving party cannot make this showing, "a court's inquiry is over and the injunction must be denied.*" Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir.1992), (*quoted in East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salv. Co.,* 414 F.3d 700, 703 (7th Cir. 2005)).

  2. First Amendment Violations

"When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor." *Joelner*, 378 F.3d at 620 (citations omitted). In this case, the plaintiffs assert that the ordinance violates their First Amendment right to free speech because it chills speech and free exercise of religion in a public forum. Plaintiffs take the position that this ordinance is overly broad and is not narrowly tailored to serve any significant governmental interest, and that the burden on speech is too great. Plaintiffs further claim that the ordinance amounts to a "heckler's veto," and as such is unconstitutional.

Plaintiffs assert that they are likely to succeed on the merits because the ordinance in question is both facially unconstitutional and unconstitutional as applied.[1] Initially, the Court must determine if Ordinance 7878 is facially unconstitutional. Because plaintiffs' speech involves religious matters, it is considered to be of the highest constitutional order. *De Boer v. Vill. of Oak Park*, 267 F.3d 558, 570 (7th Cir. 2001).

---

[1] When a party asserts an "as applied" challenge, that challenge applies only to the application of the regulation, in this case the ordinance, to that party. *City of Lakewood v. Plain Dealer Pubs. Co.* 486 U.S. 750, 758-59 (1998). If the Court finds the ordinance to be unconstitutional as applied, the statute may not be applied to the plaintiff, but may be otherwise enforceable by the City. *Id.* Contrast a facially unconstitutional statute, which is not applicable to anyone.

4

3.      First Amendment Standards Related to Signs

The First Amendment forbids Congress from enacting laws "abridging the freedom of speech." U.S. Const. amend I.  *See also, Gitlow v. N.Y.*, 286 U.S. 652, 666 (1925).  States are also precluded from enacting and enforcing such laws by the Due Process Clause of the Fourteenth Amendment. *Weinberg v. City of Chi.*, 310 F.3d 1029, 1034 (7th Cir. 2002). The Supreme Court recognized in *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994), that although "signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land and pose other problems that legitimately call for regulation."

It has long been recognized that the protection of the First Amendment extends beyond "pure speech" and includes the peaceful expression of views by picketing, marching or demonstrating. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147(1969); *Cox v. State of La.*, 379 U.S. 536 (1965); *Thornhill v. State of Ala.*, 310 U.S. 88 (1940).

To determine if a governmental regulation is constitutional, the question is whether the challenged regulation is "content-based" or "content-neutral."  In the area of "non-commercial" speech, content-based restrictions are not permitted.  "The First Amendment forbids the government from regulating speech in ways that favor some viewpoints or ideas at the expense of others." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984). The Court must look at the content of the speech to determine if the regulation is content-based. *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000).  Content-based regulations must meet a more exacting standard than content-neutral regulations which simply restrict the "time, place,

5

and manner" of public speech. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). "The principle inquiry in determining content neutrality, in speech cases generally and in time, place or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

The Seventh Circuit has held that it is constitutional to "respect a government's recognition that different forms of First Amendment activities have varying degrees of effects on its interests, as long as the government is not attempting to suppress a certain message or viewpoint." *Weinberg*, 310 F.3d at 1036.

    A.    <u>Specifics of Ordinance 7878</u>

Ordinance 7878, specifically provides that the City "authorizes the use of main streets, to host no less than four parades a year." It states that vehicular traffic may be blocked by the parade, and that "sidewalks, easements, curbs and streets, are crowded with children and their families who wish to view the parade without obstruction. . . ." (Ordinance 7878 ¶ 3.) The four recognized parades are the Santa Claus parade in December, the Park District children's parade in May or June, the Granite City High School Homecoming parade in the Fall, and the annual Labor Day weekend parade. *(Id.* at ¶ 4).

The Ordinance further provides that the City has a legitimate interest in protecting its citizens and making sure that the streets and sidewalks are available for all citizens. The City has expressed an interest in maintaining the flow of pedestrian traffic while allowing the viewing of the community parades. *(Id.* at ¶ 6). Therefore, for those four parades specified, the ordinance restricts any individual from carrying a sign larger than 8 1/2 inches by 11 inches

within 25 feet of any portion of the parade route.  This prohibition does not apply to affixed signs, signs in windows, yard signs or signs staked into a lawn or the ground.  The Ordinance also does not apply to signs displayed in the parade itself. (*Id.* at ¶ 7.)

## **DISCUSSION**

As discussed earlier,  "when a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor." *Joelner*, 378 F.3d at 620 (citations omitted).

    1.    <u>Content Neutral and Time, Place and Manner Considerations</u>

When a government seeks to regulate speech in a public forum, the government bears the burden of showing that the regulation is "content-neutral."  Moreover, "[t]he government violates the Free Speech Clause of the First Amendment when it excludes a speaker from a speech forum the speaker is entitled to enter."  *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829-30 (1995)*; Christian Legal Society v. Walker*, 453 F.3d 853, 865 (7th Cir. 2006).  Here, Ordinance 7878 appears content-neutral on its face.  When speech is content neutral, the government must show that the restriction is "narrowly tailored to further substantial government interests," and "leaves open ample alternatives for communicating the desired message." *Perry Educ. Ass'n*, 460 U.S. at 45.

Plaintiffs have argued that the ordinance was specifically designed to restrict the speech of this type of protester, i.e. abortion protesters and pro-life supporters.  Clearly a parade on a public street is a typical public speech forum. The defendants assert that the City's interest is in promoting safety at public events and allowing free flow of pedestrian traffic on the sidewalk.  They state that the Ordinance is clearly content-neutral, as it does not attempt to censor or

restrict the content of the speech, but rather the size of a sign and where it can be displayed. The Supreme Court has held that public forum regulations that are designed to ensure the safety and convenience of citizens are one means of safeguarding good order. *Thomas v. Chi. Park Dist.* 534 U.S. 316, 323 (2002).

Given the City's stated interest in promotion of public safety as a purpose for enacting this statute, the question then becomes whether the restriction is "narrowly tailored" to meet legitimate state goals. Plaintiffs assert, and there is some merit to their claim, that this is really a heckler's veto, designed to stop this type of political speech.

A. Heckler's Vetoes

The Supreme Court has held in nearly every case involving a "heckler's veto" that it is not acceptable for the state to prevent a speaker from exercising his constitutional rights because of the reaction to him by others. *See Coates v. City of Cincinnati*, 402 U.S. 611, 615-16 (1971) (state may not punish citizens for engaging in conduct "annoying" to others); *Bachellar v. Maryland*, 397 U.S. at 567 (state cannot punish Viet Nam protestors because of the "resentment" of onlookers); *Gregory v. Chi.*, 394 U.S. 111, 117 (1969) (disorderly conduct conviction cannot stand when defendant acted in an orderly manner but surrounding crowd became hostile). Notably, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression. Where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." *Thomas,* 534 U.S. at 323. Clearly, a state may not keep law and order by depriving its citizens of their rights, *Cooper v. Aaron*, 358 U.S. 1, 16 (1958), and the City of Granite City could not deny a parade permit *simply* because of the concern about the

8

adverse reaction to the marchers by others.

Although the City certainly is not powerless to prevent imminent violence or lawlessness resulting from a clash between the marchers and onlookers, any curtailment of First Amendment rights must be based on a present abuse of rights, not merely a fear of future misconduct.  A narrowly tailored ordinance to accomplish this goal is constitutionally acceptable. However, in this case, the Court **FINDS** that the ordinance in question does not constitute a narrowly tailored restriction.  There is no valid basis for the argument that an 8 1/2 by 11 inch sign is the least restrictive alternative available to meet the goals of free pedestrian traffic, unobstructed views by parade goers and public safety.   To say that plaintiffs' target audience of politicians, walking or riding in cars as parade participants, would even be able to see a sign that is 8 ½ by 11 inches at a distance of 25 feet from the parade route is absurd.  Defendants' position that plaintiffs have alternatives available, including the ability to contact these individuals at the beginning or end of the parade route, would be more intrusive, and less likely possible,  than to convey that same message while standing along a parade route with a sign.

The Court is hard pressed to think of a more public forum than a Labor Day parade full of local, state and even national politicians who will travel down a major city street.  This is precisely the type of forum that the courts have recognized as a critical venue for the free expression of speech by citizens.

Although the Court will not engage in the exercise of attempting to define for the parties a specific size of sign or distance from a parade route that *would* be reasonable and pass Constitutional muster, the Court remains persuaded that there *are* reasonable size and distance restrictions available to the City which would allow it to accomplish its goals of safety, an

unobstructed view, and the free flow of pedestrian traffic, while at the same time allowing citizens to express their constitutionally protected right to freedom of speech in a public forum. The Court has previously encouraged the parties to attempt to reach an amicable settlement of this issue. The Court again asks the parties to attempt to come to a joint resolution of this issue, so that both parties' needs can be reasonably met.

## CONCLUSION

The Court **FINDS** that the plaintiffs have established a reasonable likelihood of success on the merits of their claim. The remaining factors, the balance of harm and whether the injunction is in the public interest, also are in favor of plaintiffs. The loss of an ability to exercise one's right to free speech, "even for minimal periods of time, unquestionably constitutes irreparable injury." *Elroy v. Burns,* 427 U.S. 347, 373 (1976). Moreover, the public interest in protecting First Amendment liberties is always high. *Joelner,* 378 F.3d at 620.

The Court **FURTHER FINDS** that all of the factors in this case weigh in favor of granting plaintiffs' motion and issuing the injunction. Plaintiffs' motion for a preliminary injunction is therefore **GRANTED** and defendants are hereby **ENJOINED** and **RESTRAINED** from enforcing Granite City, Illinois, Ordinance 7878, "An Ordinance Regulating the Location or Size of Signs During Certain Parades," until further Order of the Court.

This Order is conditioned upon plaintiffs posting a surety bond in the amount of $2,000.

**IT IS SO ORDERED.**

**DATED: August 31, 2006**

                                           **s/ WILLIAM D. STIEHL**
                                                **DISTRICT JUDGE**