IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MIA MICHAEL, DANIEL MICHAEL, and ANGELA MICHAEL, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Cause No. 06-CV-01-WDS |
| THE CITY OF GRANITE CITY, ILLINOIS, a Municipal Corporation, EDWARD HAGNAUER, Mayor of the City of Granite City, in his official and individual capacities, RICHARD MILLER, Chief of Police of Granite City, in his official and individual capacities, and Granite City Police Officers MERZ and NOVASICH, in their individual capacities, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

This matter is before the Court for Findings of Fact and Conclusions of Law after a bench trial. The plaintiffs filed an Amended Complaint seeking to recover for alleged violations of their First, Fourth and Fourteenth Amendment rights related to their efforts to protest in favor of pro-life at Granite City, Illinois sponsored parades. The only remaining claim before the Court for determination is whether defendants' actions during the November 2005 Christmas Parade in Granite City amounted to a restriction of plaintiffs' First Amendment rights to freedom of speech and religion because the defendants withheld police protection from plaintiffs and threatened to charge them with assault.

The Court previously granted plaintiffs' motion for a preliminary injunction, enjoining the City of Granite City from enforcing Granite City Ordinance 7878 on the grounds that was unconstitutional because the ordinance was not narrowly tailored; was too restrictive on the permitted size of any signs; and was too restrictive in limiting the distance from a parade route

for the displaying of signs (See, Memorandum & Order at Doc. 34). The Court thereafter granted plaintiffs' motion for partial summary judgment, finding that Granite City Ordinance 7878 was unconstitutional, as written, and amounted to a heckler's veto (See, Memorandum & Order at Doc. 48), and precluded the City from attempts to enforce the Ordinance. The Court held a bench trial on the remaining claim of First Amendment violation based upon a failure to protect and threat to prosecute, and took the matter under advisement. The Court now enters the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1. Plaintiffs to this action are Mia Michael, Daniel Michael, and Angela Michael. The defendants are the City of Granite City, Illinois, a municipal corporation; Edward Hagnaure, Mayor of the City of Granite City, sued in his official and individual capacities; Richard Miller, Chief of Police of Granite City, sued in his official and individual capacities; and Granite City police officers Tony Merz and Nicholas Novasich, both of whom are sued in their individual capacities.

2. Plaintiffs have regularly attempted to exercise their First Amendment rights, based on their religious and personal beliefs as pro-life protestors, and they carry protest signs showing photographs of aborted fetuses at public events in Granite City.

3. During the Christmas Parade in Granite City on November 19, 2005, the plaintiffs, Mia Michael, and Angela Michael,[1] together with a group of other pro-life supporters, held several large pro-life banners and signs. The protesters were present at the parade site from approximately 1:00 P.M. until 5:00 P.M. The parade lasted from approximately 2:00 P.M. until 4:00 P.M. that day.

---

[1] Daniel Michael was not at the parade.

4. The protesters gathered at the corner of Niedringhaus and Madison in Granite City, which was the beginning of the parade route, and began setting up their signs. Some of the signs held by the protesters had only words, others had graphic depictions of aborted fetuses.

5. As the protesters were setting up their signs, the crowd nearby began heckling the protesters, telling them in various ways that the protesters should not be at the parade and that they "needed to leave."

6. At some point the Mayor, defendant Hagnauer, asked the protesters to turn their signs around, saying that their signs were fine, but not the graphic pictures. This is depicted on the videotape which was admitted into evidence. There was also evidence that an unidentified person, who was on the parade route in a golf cart, drove the cart back and forth in front of the protesters. There is no evidence that this person was a Granite City official and he was not one of the named defendants.

7. After approximately 10 to 15 minutes, the protesters were approached by a woman from the crowd, Sheryl Horgon, who physically and deliberately shoved one of the protesters, Angela Rataj, who was holding a large banner with another protester. Horgan then kicked a sign held by another protester. Mia Michaels was videotaping the parade (Pl. Ex. 2), and both Mia Michael and Rataj told the woman not to touch Rataj as it was, "Assault."

8. At that point, other people from the crowd pushed forward and Mia Michael was pushed backward by Horgon's daughter, causing Mia Michael to fall and hit her head. Plaintiff Angela Michael, Mia Michael's mother, then called for help and defendant Merz arrested the woman who pushed down Mia Michael, placed her in handcuffs and took her into custody by placing her in his squad car.

9. The arresting officer, defendant Merz, then asked the protesters to leave the area at the start of the parade route with their signs.

10. The protesters refused to leave, and Merz responded by releasing Horgon from his custody and stated, "It's over." The entire incident lasted approximately 10 minutes.

11. After the parade was over the plaintiffs, accompanied by other protesters went to the Granite City Police Department to file charges. Horgon came into the Station a few minutes later and lunged at Angela Michael. Two officers then placed Horgon in handcuffs and took her into custody.

12. Plaintiffs inquired about pressing charges and were told that because they had refused to leave the corner when directed by the police officer, they could not now press charges. They were directed to call the Police Chief the following Monday.

13. Daniel Michael called the police department the Monday after the parade to inquire why the police did not take the statement from either Angela Michael or Mia Michael after the parade. He was told by Detective Novacich that the case was under investigation. A few days later, Daniel Michael was informed by defendant Novacich that there was a possibility that they would have to press charges against Mia Michael for possible assault against Horgon with her camera (for being too close).

14. Two weeks later, the Michaels were called by the police and asked to come to the station. At that point, they met with Detective Novacich who wanted to talk to them about the incident and wanted to talk with Mia Michaels privately. Mia was, at that time, 17 years old. After speaking with the Michaels, Detective Novacich discouraged them from pressing charges, stating that they had witnesses who indicated that the Mia Michael had also assaulted someone at the parade and if the plaintiffs chose to press charges, then the City would have to press charges against Mia. Later inquiry revealed that the case had been turned over to the State's Attorney for review.

15. The plaintiffs chose not to press charges and, for approximately two weeks out of

fear of reprisals they stopped going to the Granite City Hope Clinic, a clinic that provides abortion services, to protest. Angela Michael testified before this incident they had been protesting at the clinic every day that the clinic was open, which was four to five days a week.

16. The plaintiffs each testified that they were traumatized by the incident, and were harassed after the parade as they protested outside of the Hope Clinic. Angela Michael testified that Horgon later came to the clinic and taunted them.

17. Plaintiffs presented evidence that on a series of occasions the City of Granite City had interfered with the Michaels' attempts to protest outside the Hope Clinic. They recounted incidents where they were required to move their vehicle when it was illegally parked, despite the fact that others in the area who were also illegally parked were not required to move their cars; that they were ticketed for parking outside the clinic; Daniel Michael testified that on other occasions they and other pro-life protesters have been discouraged from filing charges against others involving assaults against them while protesting by being threatened by the Granite City police that counter charges would be filed against the protesters; Daniel Michael testified that he was charged in 2004 with battery at the clinic for pushing, and that an individual, Melissa Slater, who was on the other side of the altercation was also charged. Those charges were later dismissed against Daniel Michael.

18. Defendant Sergeant Merz testified that on the day of the parade, he was dispatched, by radio, to an incident along the parade route. He was approached by Angela Michael who said that her daughter had been pushed and a sign had been kicked. Merz talked to Horgon who was agitated and screaming. She admitted that she had kicked the sign and would do it again. He handcuffed Horgon and put her in the squad car. Others at the site approached Merz and stated that Mia Michael had assaulted Horgon by pushing the video camera in Horgon's face after she kicked the sign. His initial review of the situation was that there were conflicting stories and that

5

both sides were claiming assault and battery.

19. Merz was told to take everyone to the police station, because the parade was being held up by the incident. Merz estimated the crowd on the corner to be between 80 and 100 people. Merz testified that he did not ask the plaintiffs to leave, or to take their signs down, or to cover their signs.

20. Merz asked Angela Michael and the others to come to the station so he could take their statements. When Angela and Mia refused to go, he released Horgon and said that the incident was over. He stated that the more significant incident was the injury to Mia Michael, in his estimation, and when she refused to go with him to fill out a complaint, he believed that meant that they did not want to pursue charges. He later returned to the station and wrote a report on the incident, which was introduced into evidence. Later that evening the plaintiffs came to the station and he spoke with them in the lobby. Defendant Merz testified that he told them that he was writing a report, but stated that he did not tell them that they could not file charges.

21. Merz testified that he has never received direction from either the Mayor or the Chief of Police to treat the protesters any differently from other citizens.

22. Detective Novacich testified that he received Sergeant Merz's report from Chief Miller and began contacting witnesses. He interviewed Angela Michael, Mia Michael, Sheryl Horgon, Melayne Weinhoffer, Talitha Jackson and Arthur Asadorian; he talked to Daniel Michael; and also spoke to Amanda Rains by telephone. As a result of his investigation, he generated a report and notified Daniel Michael that as a result of his investigation, he intended to charge Mia Michael with assault; Sheryl Horgon with disorderly conduct and Amanda Rains with battery. Daniel Michael then discussed with him what would happen if either party refused to prosecute. The matter was referred to the States' Attorney's office.

23. One of the people he interviewed, Talitha Jackson, was a non-party witness who

stated that she saw Mia Michael throw herself to the ground without anyone touching her. A DVD of that interview was introduced into evidence. Arthur Asadorian, a firefighter and non-party witness, stated that he watched the incident and saw a female protester with a camcorder thrust the camera into Horgon's face, and that physical contact was made at some point. He then stated that he saw the female with the camcorder step backwards out of the crowd, look left and right and then slowly fall down into a prone position.

24. In addition to taking the statements of various witnesses, Detective Novacich reviewed the videotape taken by Mia Michael during the incident. He stated that he believed that the tape reveals that Horgon was causing a disturbance and that Mia Michael, while operating the camera, got the camera very close to Horgon's face, at which time there was some yelling and the picture ends.

25. Detective Novacich turned his file over to Assistant States's Attorney Calvin Fuller for his review. Fuller later told Novacich that he did not believe there was sufficient probable cause to charge people in this case.

26. Chief of Police Miller, testified that he was aware of the incident later in the day of the parade. Because this was a case of some interest, he reviewed Merz's report and, after reviewing it, he turned the matter over to the detectives for further investigation.

27. Miller further testified that the City has no special policy with respect to pro-life protesters, and that there is no special traffic enforcement policy with respect to the Michaels. In fact, he stated that because the City is aware of the fact that their activities are controversial, they actually receive more care and police security than other non-protesting citizens.

## CONCLUSIONS OF LAW

Plaintiffs claim that the defendants violated their rights to express their views as protected by the First Amendment and their rights to equal protection under the law. Defendants

assert that plaintiff has failed to establish that any of the defendants' actions amounted to a constitutional violation in this incident. Specifically, the Defendant Mayor Ed Hagnauer should be dismissed because plaintiffs have not shown any activity on his part which amounts to a constitutional violation; that neither Sergeant Merz nor Detective Novacich discriminated against the plaintiffs; that the plaintiff has not shown that the City or the Police Department have a course or pattern or practice of discrimination against these plaintiffs.

Plaintiffs assert that the past practices of the City and the Police Department establish a continuing pattern of discriminatory practices of attempting to restrict plaintiffs' First Amendment rights to freedom of speech and religious expression by the defendants' policy and custom of withholding police protection from pro-life individuals while they are protesting, and by their policy and custom of responding to complaints of assault with threats to charge the plaintiffs. Plaintiffs assert that the Court need look no further for proof of this pattern and practice than to the City's passage of Ordinance 7878 in January of 2006, which the Court struck down as unconstitutional.

### 1. ANALYSIS

To establish liability for the City, under *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), plaintiffs must show that "the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Bd. of Comm'rs of Bartholomew County,* 183 F.3d 734, 737 (7th Cir.1999). "Unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Rasche v. Beecher,* 336 F.3d 588, 597 (7th Cir.2003).

Here, the plaintiffs attempt to establish a City policy or practice of discriminating against pro-life protesters in general, and against them specifically. To that end, they reference the following: the fact that they were discouraged from filing a complaint by being threatened with having charges filed against Mia Michael; that the defendant Hagenauer asked the protesters to turn their signs around; the fact that the City did not try to stop an unidentified individual from driving his golf cart in front of the protesters; that historically the City has selectively prosecuted pro-life protesters by ticketing them when other cars were not ticketed; that there have been other incidents in which they, or other protesters, were discouraged from filing complaints; and that the City has a history of passing ordinances designed to inhibit free speech by pro-life protesters. They would also have the Court consider the rulings of this Court involving prior ordinances of the City which were struck down, *see Hornia v. City of Granite City*, 05-79-MJR (striking down Granite City Ordinance 7861 which restricted distribution of handbills) *affirmed in part and reversed on damages, Hornia v. City of Granite City,* 538 F.3d 624 (7th Cir. 2008), and this Court's ruling on the constitutionality of Ordinance 7878.

Although this Court has held, both in this case and in prior cases, that the City has passed ordinances which were unconstitutional restrictions on freedom of speech, the Court cannot use those ordinances to bootstrap together a finding that the City has a pattern or practice of discriminating against these plaintiffs with respect to the incident in November of 2005.

Clearly there is no express policy in the facts of this case, nor is there a "widespread" practice of discrimination. In reaching this conclusion, the Court notes that several of the incidents referred to by the plaintiffs were: a) remote in time (incidents at the Hope Clinic from several years prior to the incidents in this case); b) claims of discriminatory treatment unsupported by the record (the example given by Daniel Michael of the charges that were brought against him, given that charges were also brought against a person on the other side of

9

the altercation, and that both of those charges were eventually dropped); c) actions attributable to someone other than the defendants, or to those not under the control of the defendants (the golf cart driver); d) unconfirmed claims (i.e. evidence of discrimination in selective traffic violation prosecutions in that only the Michael's car was ticketed outside the Hope Clinic unsupported and speculative).

Nor is there evidence that someone in a position of "final policymaking authority," *Rasche,* 336 F.3d at 597, acted in a manner in this incident to violate the plaintiffs constitutional rights, such that the City would be held liable for the actions.

### A. Mayor Hagneuer

It has long been recognized that the protection of the First Amendment extends beyond "pure speech" and includes the peaceful expression of views by picketing, marching or demonstrating. *Shuttlesworth v. City of Birmingham*, 394 U.S. 147(1969); *Cox v. State of La.*, 379 U.S. 536 (1965); *Thornhill v. State of Ala.*, 310 U.S. 88 (1940). The Supreme Court has held in nearly every case involving a "hecklers' veto" that it is not acceptable for the state to prevent a speaker from exercising his constitutional rights because of the reaction to him by others. *See Coates v. City of Cincinnati*, 402 U.S. 611, 615-16 (1971) (state may not punish citizens for engaging in conduct "annoying" to others). Although Mayor Hagnauer is in a position of authority for the City, as Mayor, and although he asked the plaintiffs at the parade, to turn their signs around, there was no evidence introduced that he required them to do so, or had law enforcement force them to do so. This was, simply put, a request and plaintiffs did not honor that request, which was clearly within their rights. Clearly, this activity by Mayor Hagneuer did not rise to the level of a suppression of freedom of speech, and, even considering all of the other evidence offered, there is nothing to show that this defendant violated plaintiffs' constitutional rights at either an official or individual capacity level. Accordingly, the Court

enters judgment in **FAVOR** of defendant Edward Hagnaure, Mayor of Granite City, in both his individual and official capacities and **AGAINST** plaintiffs Mia Michaels, Angela Michaels and Daniel Michaels.

### 2. Defendants Miller, Merz and Novacich

The record reveals that defendants Miller, Merz and Novacich were at all times relevant to the claims in this case, acting within the scope of their authority and did not act with any discriminatory intent towards plaintiffs. The situation presented to them was certainly one where differing opinions as to what happened could have lead them to reasonably believe that both parties in the altercation at the parade bore some liability.

With respect to Defendant Merz, when the plaintiffs Mia and Angela Michaels declined his request to go with him to file charges after the incident, it was more than reasonable for him to assume that they were not intending to press charges against Horgon. Once that appeared to be the situation, Merz was justified in releasing Horgon and not pursuing the incident. Moreover, Merz filed a report, which is within normal law enforcement practices. Therefore, the Court **FINDS** that the plaintiffs have failed to establish a claim against defendant Merz for violations of their constitutional rights with respect to the Christmas parade incident.

Similarly, the record simply does not support plaintiffs claims that the actions taken by both Police Chief Miller and Detective Novacich were unconstitutionally discriminatory or otherwise in violation of their First Amendment rights with respect to the November 2005 incident. Chief Miller, after reviewing the report of Merz, sent the file to the Detective for further investigation. This was not an unusual practice and Detective Novacich conducted a thorough investigation which resulted in a finding that there were possible charges that could be brought against three individuals as a result of the incidents at the parade. His findings were

turned over to the States' Attorney's Office which determined not to prosecute. Both Detective Novacich's findings and the decision not to prosecute seem reasonable under the facts of this case.

The Court **FINDS** therefore, that plaintiffs' have failed to support their claims against defendant Miller, Merz and Novacich and finds in favor of these defendants and against plaintiff on all claims.

### 3. The City of Granite City

Although the Court has found against the plaintiffs' on their claims related to the November 2005 incident and the claim of a pattern and practice of discrimination with respect to their civil and First Amendment rights, the Court has also previously determined that the City of Granite City violated plaintiffs' constitutional rights to freedom of speech when it passed Ordinance 7878 which attempted to restrict the manner and place of plaintiffs' exercise of their rights to protest.

### CONCLUSION

Accordingly, the Court **FINDS** in **FAVOR** of defendants the Mayor of Granite City, Edward Hagnaure, sued in his official and individual capacities; the Chief of Police, Richard Miller, sued in his official and individual capacities; and Granite City police officers Tony Merz and Nicholas Novasich, both of whom are sued in their individual capacities and **AGAINST** plaintiffs Mia Michael, Angela Michael and Daniel Michael on all claims raised by plaintiffs in the First Amended Complaint.

The Court **FURTHER FINDS** in **FAVOR** of plaintiffs Mia Michael, Angela Michael and Daniel Michael and **AGAINST** the defendant the City of Granite City, a municipal corporation, only on plaintiff's claims with respect to Ordinance 7878. The Court **FURTHER**

**FINDS** in **FAVOR** of defendant the City of Granite City, a municipal corporation, and **AGAINST** plaintiffs Mia Michael, Angela Michael and Daniel Michael on all remaining claims in the First Amended Complaint.

The Court **FURTHER FINDS** that plaintiffs' damages on their claim with respect to Ordinance 7878 were minimal, and that plaintiffs suffered little damage, including emotional damage, in light of the fact that the Ordinance was never put into effect, nor exercised against the plaintiffs, or others. Accordingly, the Court **AWARDS** damages on this claim jointly to plaintiffs Mia Michael, Angela Michael and Daniel Michael in the amount of $300. The Court **FURTHER FINDS** that the plaintiff's counsel is entitled to recover attorneys fees for this claim only, and **DIRECTS** plaintiff's counsel to submit a verified affidavit with respect to his fees and costs on this claim within twenty (20) days of the date of this Order. Objections, if any, to the amount of fees sought shall be filed within seven (7) days thereafter.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly. The Court **RETAINS JURISDICTION** over this matter to determine the appropriate amount of fees and costs in this matter.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: March 27, 2009.**

s/ WILLIAM D. STIEHL
DISTRICT JUDGE